## HOSCH LUMBER COMPANY *v.* WEEKS.

1. Where several executors of a will have qualified, the joint act of all of them is necessary to execute a special trust created by the will.

2. Where one of several coexecutors executes a deed which depends for its validity upon the signature of all, the heirs of the estate will not be held to have acquiesced in his unauthorized act, where there is no evidence that actual notice of the execution of the deed was ever brought home to them and

the deed is not recorded until after the execution and record of a later deed by an administrator de bonis non of the estate.

3. A party who gives notice to his adversary that the depositions of a named witness will be taken at a given time and place is under no legal obligation to appear at the place and time stated and take the depositions. If the opposite party, after complying with the notice, desires the evidence of the witness for himself, he must on his own part give notice to his adversary as required by the law relating to the taking of depositions. He may not "cross-examine" a witness who has never been examined in chief, and introduce in evidence the depositions so taken.

Argued May 24,—Decided June 15, 1905.

Ejectment.    Before Judge Mitchell.    Colquitt superior court. January 9, 1905.

*A. G. Powell, C. J. Haden, W. S. Humphreys, Y. L. Watson,* and *E. L. Bryan,* for plaintiffs.    *Shipp & Kline,* for defendant.

CANDLER, J.    This was a common-law action of ejectment, brought to recover a lot of land in Colquitt county.    Several demises were laid, as will hereafter more fully appear.    The plaintiff and the defendant claimed under a common source of title, viz., the estate of James Davison, of Greene county, who held under a grant from the State, and who died in 1882, leaving a will in which it was provided that the testator's wild lands (which included the lot now in dispute) "be sold at such time and place as may be to the best interest of my estate, at the discretion of my executors and the ordinary of this (Greene) county."    The testator's wife, Ella M. Davison, was made executrix, and W. F. Davant and W. A. Overton executors of the will. In 1884 Davant and Overton, by consent of the executrix, resigned as executors, and were duly discharged from their trust by the ordinary of Greene county.    In 1894 Robert E. Davison filed a petition in the court of ordinary of Greene county, reciting that the duly nominated executors of the estate of James Davison were no longer qualified to act, and that the estate was not fully administered, and praying that he be appointed administrator de bonis non cum testamento annexo of the estate of James Davison.    The petition was granted, and letters of administration issued to Robert E. Davison.    In 1897, for the purpose of administering the estate of James Davison, and for distribution among the heirs of the estate, the administrator applied for and received from the ordinary of Greene county permission to

sell all the wild lands of the estate of James Davison at public or private sale, by tracts or as a whole, citation and notice having first been made and published; and on June 8, 1897, the lot in dispute, with others, was conveyed by the administrator to Charles J. Haden. This deed was recorded in the office of the clerk of the superior court of Colquitt county, on May 6, 1898. On April 6, 1903, the administrator made a deed in which it was recited that "the estate of James Davison, deceased, late of Greene county, Ga., has been fully administered, pursuant to the terms of the will of said deceased, James Davison, and all of the debts of said estate have been fully paid," and conveying to the devisees named in the will, four in number, "all the right, title, and interest in the real property of said estate that may yet remain in said estate," designating certain lots, including the one now in suit. In 1899 C. J. Haden conveyed the land in dispute to the Hosch Lumber Company, the plaintiff below, and in 1903 the devisees under the will of James Davison made a like conveyance to Haden. The foregoing is an outline of the claim of title set up by the plaintiff. The defendant introduced a quit-claim deed made by W. F. Davant (who, as will have been seen, was one of the executors of the will of James Davison) to J. B. Norman, dated March 7, 1882, and recorded September 12, 1898, covering the lot in dispute; and a warranty deed from Norman to the defendant, dated November 10, 1883, and recorded in 1899. The defendant also introduced in evidence, over the objection of counsel for the plaintiff, what purported to be the depositions of W. F. Davant, in which he testified, that he was executor of the will of James Davison, and had the entire management of the estate; that the other executor, Overton, and the executrix, Mrs. Ella M. Davison, gave the management of the estate entirely to him; that he executed and delivered the deed dated March 7, 1882, to James Davison, "as the virtually sole executor, and for the benefit of the estate;" that the transaction was bona fide, and done in the interest of the estate; that the other executor and the executrix did not sign the deed, because the entire matter was left to him; and that in making the deed he acted as sole executor by request of the other executor and the executrix. The defendant also introduced a certified copy of a petition to the court of ordinary of Greene county, by Davant,

Overton, and Mrs. Davison, executors of the estate of James Davison, reciting that it was to the interest of the estate, and in accordance with the will of their testator, that "all the wild and scattered lands belonging to said estate be sold," designating, among others, the lot in controversy, and praying for an order granting leave to sell such lands at private sale.   In pursuance of this petition it was ordered "that such executors have leave to sell such wild lands at private sale, if they think it is to the interest of said James Davison's estate to sell the same."   The quitclaim deed made by Davant to Norman, by virtue of this order, to which we have already referred, contained no recital of the authority under which it was executed, and was signed, "Wm. F. Davant, executor of James Davison, deceased."   At the conclusion of the evidence, the court directed a verdict for the defendant, and the plaintiff excepted.

1. It will be seen that the plaintiff put in evidence without objection a chain of title apparently complete, originating in a grant from the State to James Davison.   The defendant's title sprang from the same source, and the question arises, who has the better title ?   The parting of the ways came with the quit-claim deed by Davant to Norman in 1882.   The decision of this case turns in large measure upon the construction of this deed; for if it conveyed title, the subsequent deed from the administrator de bonis non was nugatory, and the court was right in directing a verdict for the defendant; while if it did not pass title, the defendant must yield to the superior claim of the plaintiff.   The deed from Davant to Norman was executed by virtue of a provision in the will of James Davison, that the wild lands of the testator's estate be sold at such time and place as might be to the interest of the estate, at the discretion of his executors (three in number) and the ordinary of Greene county.   The vital question at issue is whether or not Davant, a single executor, had authority to execute a deed which would pass title, his coexecutors having qualified but failing to join with him in the deed.   There seems to be no doubt that in ordinary acts of administration of an estate the act of one executor is the act of all, and is binding upon the estate.   *Hall* v. *Carter*, 8 *Ga.* 388; *Wilkerson* v. *Wootten*, 28 *Ga.* 568; *Willson* v. *Whitfield*, 38 *Ga.* 270.   The sale of the wild lands of the estate of James Davison, however,

was a special trust created by the will; and the concurrent discretion of the three executors and the ordinary of Greene county was required to execute it; and it is well settled that to execute a special trust all the executors must join. This distinction was clearly drawn in the Code of 1882, §2449, which was in force at the time the deed from Davant to Norman was executed, and is still the law of this State. See Civil Code, §3317, where it is provided that "if more than one [executor] qualifies, each is authorized to discharge the usual functions of an executor, but all must join in executing special trusts." See also *Willson* v. *Whitfield,* supra; 5 Enc. Dig. Ga. Rep. 845.

2. It is claimed, however, by counsel for the defendant, that the heirs of James Davison and those claiming under them are estopped by long acquiescence in the deed from Davant to Norman. A complete reply to this contention is that there is in the record no evidence whatever of actual notice to the heirs of the deed, while that instrument was not recorded until September 12, 1898, more than sixteen years after its execution, and several months after the record of the deed from Davison, administrator, to Haden. It was not shown that any part of the purchase-price received by Davant from Norman was paid to the heirs, or that they knew at any time that the conveyance had been made. It was not claimed that the defendant or his predecessors in title had acquired any prescriptive title to the land in controversy.

3. It was sought to show by the depositions of Davant that he had authority from the coexecutors to execute the deed to Norman and to manage the affairs of the estate generally. From the bill of exceptions it appears that there was no evidence that these depositions were taken upon notice; "that they were not accompanied by any notice to take the same, nor was there any service or evidence of service thereon; that they were not dated; neither was it shown that they were taken in any lawful manner or by any lawful authority, being unaccompanied by any caption or return. The deposition began in the following language: 'Hosch Lumber Co. *vs.* J. S. Weeks et al.; in the superior court of Colquitt county; Georgia, Greene county; deposition of W. F. Davant, being duly sworn on cross-examination by the defendant.' Then follows the deposition, signed by W. F. Davant;

and following the signature of W. F. Davant was the following: 'The foregoing depositions were taken before me as stated in the caption, and answers reduced to writing by me; and I certify that I am not interested in the cause nor of kin or counsel to either of the parties. George A. Merret, Commissioner.' There was attached an order from John C. Hart, judge of the superior court, appointing George A. Merret as a commissioner to take depositions in the county of Greene, and a statement of Merret that he accepted the appointment. There was no notice to take the deposition, and no evidence of any notice, nor any waiver thereof." It appeared further that counsel for the defendant "stated that he had been served with a notice by the plaintiff to take this witness's testimony, but that the plaintiff failed to attend at the hearing, and that the defendant proceeded to cross-examine the witness and to have his testimony taken." The depositions were admitted over the objections of the plaintiff, and this is assigned as error. Clearly the evidence was inadmissible. There was barely a semblance of compliance with the provisions of the Civil Code, §§ 5315, 5316, 5317, relating to the formal requisites of depositions to be used as evidence. The mere statement of counsel in the court-room can not supply the deficiency of these vital requisites. Conceding everything that he stated, the depositions were still inadmissible. They purported to have been the "cross-examination" of the witness Davant. A cross-examination where there has been no examination in chief is a paradox. If, after having been notified by the plaintiff that the depositions of the witness would be taken, and having complied with the notice, and the plaintiff having failed to put in an appearance at the time specified, the defendant desired the testimony of the witness in his own behalf, he should on his part have given the plaintiff notice that the witness would be examined as his witness. The plaintiff was under no legal obligation to examine the witness after having given notice that his depositions would be taken; and if he was to be examined as a witness for the other party, the plaintiff had the right to be notified, so as to be present and cross-examine him.

*Judgment reversed.*     *All the Justices concur, except Simmons, C. J., absent.*