[Civ. No. 22770.   Second Dist., Div. Two.   Mar. 5, 1958.]

Estate of ROBERT P. VAELL, an Incompetent Person. ROBERT P. VAELL et al., Appellants, v. FRANK M. STEPHENS et al., Respondents.

Robert P. Vaell and Marie P. Vaell, in pro. per., for Appellants.

Calvin L. Helgoe and James T. Byrne for Respondents.

KINCAID, J. pro tem.*—Robert P. Vaell, joined by his mother, Mrs. Marie P. Vaell, appeals from those portions of the judgment entered herein as follows:

1. "Provisions of Section 1654, Probate Code of the State

---

*Assigned by Chairman of Judicial Council.

of California, the Administrator of Veterans Affairs, Veterans Administration Facility, Los Angeles filed its Certificate of Incompetency upon due examination.''

2. ''That the said ROBERT P. VAELL is incompetent and is unable unassisted to manage and take care of his property.''

3. ''That the said sum of One Hundred Fifty Dollars ($150.00) is necessary . . .''

Section 1654, Probate Code[1] is a part of the Uniform Veterans' Guardianship Act adopted in numerous states (West's Annotated Codes, Probate, chap. 15, p. 662) including California and covered by sections 1650 and 1669, Probate Code.

A petition for appointment of guardian of estate of Robert P. Vaell, hereinafter referred to as the incompetent, was filed on September 5, 1956, under the provisions of section 1652, Probate Code. It alleged that Vaell had been rated incompetent by the United States Veterans Administration on examination in accordance with the laws and regulations governing such United States Veterans Administration and that the appointment of a guardian is a condition precedent to the payment by the United States Veterans Administration of any monies due said incompetent person as is provided by section 1654, Probate Code. That no guardian of his estate has been appointed and his estate needs care and attention; that the bank (later appointed guardian) is a proper party to act as such; that the estate of the incompetent consists of compensation from the United States Government payable monthly from November 1954 at the rate of $181 per month; that the incompetent requires $150 per month for his necessary support and maintenance; that said bank be appointed guardian of the estate of the incompetent and that the guardian be instructed and authorized to pay to his mother the sum of $150 per month for his necessary support and maintenance beginning September 1, 1956, and until further order.

On September 15, 1956, a citation was served on the incompetent citing him to appear in a hearing on the petition on

---

[1]Probate Code, section 1654: ''Where a petition is filed for the appointment of a guardian for a mentally incompetent ward, a certificate of the administrator or his duly authorized representative, that such person has been rated incompetent by the Veterans Administration on examination in accordance with the laws and regulations governing such Veterans Administration and that the appointment of a guardian is a condition precedent to the payment of any moneys due such ward by the Veterans Administration, shall be prima facie evidence of the necessity for such appointment.''

September 27, 1956. On September 21, 1956, Marie P. Vaell, mother of the incompetent, filed an objection to the appointment of a guardian.

On September 27, 1956, the Veterans Administration filed its certificate of incompetency reciting that Robert P. Vaell has been rated incompetent under section 1654, Probate Code, by the Veterans Administration on examination in accordance with the laws and regulations governing such Veterans Administration and that the appointment of a guardian is a condition precedent to the payment by the Veterans Administration of any monies due to said incompetent person. On September 27 the incompetent entered his written appearance in this proceeding by the filing of a petition to dismiss the petition for appointment of guardian. On that date a hearing was had at which the incompetent failed to appear in person and a continuance of the hearing was ordered for the purpose of allowing the incompetent to personally appear or to allow a doctor to examine him.

On October 26, 1956, a further hearing was held, the incompetent again failing to appear. His mother appeared stating that he would not appear nor would she produce him in court. Evidence was received that a doctor from the Veterans Administration had visited the home of the incompetent for the purpose of examing him but had been refused admittance. Both at the first and second hearings the incompetent filed written statements opposing the granting of the petition, and renouncing all claims of compensation from the United States Government. He further lodged his objection to the granting of a petition on the ground that he might thereby lose his powers to administrate other properties consisting of oil lands and oil royalties to which he claimed heirship.

The court thereupon made its findings of fact that, after due notice given, the incompetent had wilfully absented himself from appearing in person at the time of the hearing in court; that the certificate of incompetency having been filed by the Veterans Administration showing him to have been rated incompetent upon due examination in accordance with the laws and regulations covering the said Administration, the appointment of a guardian of the estate of said incompetent is a condition precedent to the payment of any monies due him by said Administration; that after hearing the evidence finds he is unable unassisted to manage and

take care of his property and that his estate needs the care and attention of a fit and proper party to act as guardian thereof; that the incompetent is in need of a monthly allowance for his necessary support and maintenance beginning September 1, 1956, of $150 per month and that the proper party to whom such payment should be made for his use and benefit is his mother; that the bank should be appointed as guardian of the estate of said incompetent.

An order appointing the bank as guardian of the estate of the incompetent and for payment of a monthly allowance for his support and maintenance was thereupon signed and filed. Appellants challenge the finding of the court that Robert P. Vaell is incompetent and is unable unassisted to manage and take care of his property, and argue that such finding cannot be premised alone on the filing by the Veterans Administration of its certificate of incompetency upon due examination.

Under section 1654, Probate Code, in a proceeding filed under the Veterans' Guardianship Act for the appointment of a guardian, a certificate of the administrator or his duly authorized representative that the ward has been rated incompetent by the Veterans Administration on examination in accordance with the laws and regulations governing it and that the appointment of a guardian is a condition precedent to the payment of any monies due such ward by the Veterans Administration shall be prima facie evidence of the necessity for such appointment. Section 1833, Code of Civil Procedure, defines prima facie evidence as "that which suffices for the proof of a particular fact, until contradicted and overcome by other evidence. . . ." Appellants had the privilege of presenting any evidence that would tend to refute the prima facie evidence offered by the Veterans Administration but failed to avail themselves of this opportunity.

It is well settled that the court had jurisdiction, after due notice given, to proceed with the taking of evidence as to incompetency and to make findings thereon even though the incompetent voluntarily absented himself from the hearing. (*Guardianship of Walters,* 37 Cal.2d 239, 243 [231 P.2d 473].) As was said in *Sacks* v. *Superior Court,* 88 Cal. App.2d 808, 811 [199 P.2d 396]: "Statutes enacted to protect a person against his own misguided acts or against the avarice and greed of others are conceived in the noblest of paternalistic principles for the preservation of the estate and the security of such person and for the serenity of

society as well. If an alleged incompetent could defeat the superior court of jurisdiction by a mere refusal to respond to a citation, the misguidance of his person and the losses of his estate would fall far short of the protection and security intended by the authors of the Probate Code. The contention that the court is divested of jurisdiction by the naked act of a refusal to respond to a citation is contrary to the very purpose and spirit of the law. Such statutes do not constitute pawns to be used in strategical games of wit but are enacted for social welfare and for the protection of those who are so unfortunate as to suffer brain decadence or disorders. It is inconceivable that the Legislature could have intended that the superior court should not proceed to try the petition accusing such person because the alleged incompetent is not 'produced in court.' ''

Under the evidence here presented, the prima facie showing made is sufficient to support the findings and order of the court of incompetency for the purposes of these proceedings.

Appellants further contend that the finding and order that the said Robert P. Vaell is incompetent and ''is unable unassisted to manage and take care of his property'' constitute a finding beyond the issues presented by the petition filed herein under the Veterans' Guardianship Act and is, in effect, the granting of letters of general guardianship under the provisions of section 1461, Probate Code. With this contention we agree.

The Uniform Veterans' Guardianship Act applies only to a beneficiary of the Veterans Administration defined as a ''ward.'' It covers only ''*Benefits*'' payable to the ward by the Veterans Administration which are defined as ''all moneys paid or payable by the United States through the Veterans Administration'' and ''*Income*'' which ''means moneys received from the Veterans Administration and revenue or profit from any property wholly or partially acquired therewith.'' '' '*Estate*' means income on hand and assets acquired partially or wholly with 'income.' '' (Prob. Code, § 1650.)

The act is applicable whenever, pursuant to any law of the United States or regulation of the Veterans Administration, it is necessary, prior to payment of benefits, that a guardian be appointed. (Prob. Code, § 1651.) Under section 1652 provisions are made for the filing of a petition for the appointment of a guardian of any such ward. The

contents of the petition are enumerated and it is provided that notwithstanding any law as to priority of persons entitled to appointment, or the nomination in the petition, the court may appoint some other person as guardian if the court determines it is for the best interest of the ward. In the case of a mentally incompetent ward the petition shall show that such ward has been rated incompetent by the Veterans Administration on examination in accordance with the laws and regulations governing the Veterans Administration. Notice shall be given to the ward, and to such other persons, and in such manner as is provided by the general law of this state and also to the Veterans Administration. (Prob. Code, § 1655.)

An annual accounting is provided for with notice and a true copy given the Veterans Administration. If the guardian is accountable for property derived from sources other than the Veterans Administration, he shall be accountable as is or may be required under the applicable law of this state pertaining to the property of minors or persons of unsound mind who are not beneficiaries of the Veterans Administration and as to such other property shall be entitled to the compensation provided by such law. (Prob. Code, § 1657.) Compensation to a guardian under the Veterans' Guardianship Act is limited by the provisions of section 1659, Probate Code.

As stated in the annotation on the Uniform Veterans' Guardianship Act found in 173 American Law Reports, 1061, at page 1080: ''While the sections of the uniform act concerning the disposition of the 'income' and the 'estate' of the ward seem broad enough to include all income or estate, these provisions must be limited by the definitions of terms contained in section 1 of the original and revised acts. This view is strengthened by the facts that the original act requires an accounting only for moneys received from the Veterans' Bureau, that the revised act requires an accounting of moneys thus received and 'earnings, interest or profits derived therefrom and all property acquired therewith,' and that the revised act also provides that where a guardian is accountable for property derived from other sources, the general laws of the state shall govern the accounting, and he shall not be limited to the compensation provided by the uniform act with respect to the management of such other property, although he may combine his accountings for both types of property in a single account or report.'' At pages 1077-1078: ''The effect of the appointment of a guardian under the uniform act is very limited as compared with the effect of

an appointment under the general laws. . . . Accordingly, the appointment of a guardian under the uniform act has been held not to affect the legal capacity of the ward with respect to various matters other than the administration of property received from the United States under veterans' legislation." (Citations.) And on page 1079: "Although it has been held that the uniform act is broad enough to authorize a decree giving a guardian control of all the ward's property, the better view is that the act deals only with property derived from the Veterans' Administration and the income of property acquired in whole or in part therewith" citing *Mitchell* v. *Mitchell*, 201 Ga. 621 [40 S.E.2d 738] ; *Morse* v. *Caldwell*, 55 Ga.App. 804 [191 S.E. 479] ; *Rentz* v. *King*, 66 Ga.App. 292 [17 S.E.2d 896] ; *Re Parks*, 210 La. 63 [26 So. 2d 289] ; *East Paterson* v. *Karkus*, 136 N.J.Eq. 286 [41 A.2d 332] ; *Re Farina*, 253 App.Div. 510 [2 N.Y.S.2d 987] (reversed on another ground) 279 N.Y. 780 [18 N.E.2d 865].

As was said in *Morse* v. *Caldwell* (*supra*, p. 484): "What definition of 'incompetent' is applied by the Veterans' Administration, in determining whether or not the condition of a hospital patient requires that a guardian be appointed to receive and disburse for him such benefits as he may be entitled to is not shown by the record. But, upon the issuance of the certificate by the Director or his authorized representative 'setting forth the fact that such person has been rated incompetent,' etc., the court of ordinary may, upon a petition filed, appoint a guardian to handle the benefits due such person by the federal government. Except as to the relationship thus created for the special purpose named, it does not follow that the ward is not sui juris, and, with respect to his other property and purposes, entitled to assert for himself his full legal rights in and out of court."

The Veterans' Guardianship Act was never intended as a substitute for the provisions of the Probate Code found in chapters III and IV (§§ 1440 to 1462) relating to the appointment of guardians for minors, insane or incompetent persons. The latter include all classes of persons and property and set up materially different standards as a prerequisite of such appointment. The priority of persons entitled to appointment differs. Under the Veterans' Guardianship Act, as to minors, the certificate of the administrator, or his authorized representative setting forth the age of the minor and the fact that the appointment of a guardian is a condition precedent to the payment of any moneys due him by

the Veterans Administration is prima facie evidence of the necessity for such appointment. No other showing of necessity, convenience or investigation is required as must be made under the provisions of section 1440 et seq., Probate Code. As to mentally incompetent persons the act limits its provisions to a "ward" and then only the certificate of rated incompetency is required to establish a prima facie showing whereas under section 1460, Probate Code, all insane or mentally incompetent persons are covered including "any person, whether insane or not, who by reason of old age, disease, weakness of mind, or other cause, is unable, unassisted, properly to manage and take care of himself or his property, and by reason thereof is likely to be deceived or imposed upon by artful or designing persons."

When the court made its findings herein "that the said Robert P. Vaell is unable unassisted to manage and take care of his property and whose estate needs the care and attention of a fit and proper party to act as guardian over the property of his said estate" and its order appointing the bank as guardian of his estate followed by the issuance of letters of guardianship appointing a "Guardian of the estate of Robert P. Vaell, an Incompetent Person," such findings, order and letters of guardianship must be construed to erroneously constitute the granting of letters of general guardianship under the provisions of section 1461, Probate Code, rather than of a limited guardianship as provided for by the Veterans' Guardianship Act and were in excess of the issues properly to be considered as presented by the pleadings herein.

The judgment is reversed and the cause is remanded to the lower court with directions to modify its findings, order and letters of guardianship so that all property and estate of the incompetent Robert P. Vaell be excluded therefrom excepting such benefits, moneys or estate paid or payable to him by the United States through the Veterans Administration and all revenue or profit from any property wholly or partially acquired therewith.

Fox, P. J., and Herndon, J., concurred.